**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

  *Plaintiff,*

vs.              Case No. 17-10048-01-EFM

RANDY J. JOHNSON,

  *Defendant.*

**MEMORANDUM AND ORDER**

  In May 2014, Defendant Randy Johnson was released from prison on postrelease supervision. Months later, he became the suspect in burglaries of jewelry stores. On January 13, 2015, two special agents from the Kansas Department of Corrections ("KDOC") and a law enforcement officer from the Wichita Police Department ("WPD") arrested Johnson inside his home. The KDOC officers and the WPD officer then searched Johnson's home without a warrant. Several hours later, WPD officers conducted a second search, this time pursuant to a search warrant based, in part, on observations made during the first search. During the second search, law enforcement discovered a handgun in the basement.

  Johnson now moves to suppress all evidence obtained from the second search. He contends that the first search of his house violates Kansas state law and his Fourth Amendment

rights and therefore any evidence discovered during the second search should be suppressed as fruit of the poisonous tree. As explained below, the Court denies Johnson's motion.

## I.     Factual and Procedural Background

Defendant Johnson was released from prison on postrelease supervision on May 9, 2014. At his release, Johnson signed a document titled "Conditions of Release for Parole and Post-Incarceration Supervision" (the "PostRelease Agreement") that set forth certain conditions Johnson must abide by during his postrelease supervision. For example, Johnson was required to keep his parole officer informed of his residence and employment. He could not own any firearms or ammunition, and he could not consume any mind altering substances, including alcohol. He also agreed to the search of his person, residence, or property. Specifically, Johnson agreed to: (1) "be subjected to a search of my person, residence, and any other property under my control by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension, and investigation officers with or without a search warrant and with or without cause;" and (2) "be subjected to a search of my person, residence, and any other property under my control by any law enforcement officer based on reasonable suspicion of violation of conditions of post-incarceration supervision or reasonable suspicion of criminal activity."

In January 2015, Johnson became a suspect in a burglary of a jewelry business. During the burglary an individual left blood inside the store on some of the broken glass. The blood was collected and analyzed, and a CODIS search resulted in a DNA match to Johnson. Based on this information, Johnson's parole officer issued a KDOC Arrest and Detain Order. In addition, the Sedgwick County District Court issued an arrest warrant for Johnson to be executed by the WPD.

On January 13, 2015, KDOC Special Agents Bansemer and Richardson met WPD Sergeant Pfeifer at Johnson's residence to take him into custody. Before entering the residence, Johnson's girlfriend, Ashanti Peal, exited the house with three children and told them that Johnson was not inside. The officers then went inside the residence to search for Johnson. After not finding him on the main level, the agents went to the top of the stairs leading to the basement. They announced themselves, and heard a male voice saying "I'm coming out." Johnson then stepped out from behind the stairwell and self-surrendered.

After taking Johnson into custody, Special Agents Bansemer and Richardson and Seregeant Pfiefer entered the residence for a second time, looking for evidence that Johnson violated the PostRelease Agreement or committed a crime. In the master bedroom, Special Agent Bansemer found jewelry in a couple of shoe boxes, which he believed was related to the jewelry store burglary. In the basement, Sergeant Pfeifer found a firearm holster in plain view. The officers also found a lockbox that they opened using a key found in the master bedroom. It had more jewelry in it, but no firearm.

At that point, Sergeant Pfeifer contacted WPD detectives, who decided to obtain a search warrant to search for a firearm or any other items that might be related to the burglary. WPD Detective Mellard sought and obtained a search warrant to search Johnson's residence. In the affidavit supporting his search warrant application, Detective Mellard included information regarding the DNA match to Johnson from the blood found at the jewelry store burglary and observations obtained from the first search of Johnson's residence. Several hours after the first search, WPD officers conducted a second search of Johnson's residence pursuant to the search warrant. WPD Detective Purcell found a handgun hidden in the basement.

Based on this evidence, a grand jury charged Johnson with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Johnson subsequently filed a motion to suppress, and the Court held a hearing on the motion.

### III.     Analysis

Johnson moves to suppress the evidence discovered during the second search of his residence pursuant to the warrant. He contends that the evidence found during this search was fruit of the poisonous tree because the warrant was based on information observed during the first search, which was unlawful. According to Johnson, the first search violated Kansas statutory law and the Fourth Amendment.

**A.     The First Search Was Valid under the Totality of the Circumstances.**

Johnson relies on a recent decision of the Kansas Court of Appeals in *State v. Toliver*[1] in support of his argument that the first search of the residence was unlawful. That decision interpreted the statutory language of K.S.A. § 22-3717(k)(2) and (3) in effect in January 2015 (the time of the first search).[2] These provisions state:

> (2) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections, enforcement, apprehension, and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause;
>
> (3) Parolees and persons on post release supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity.

---

[1] 52 Kan. App. 2d 344, 368 P.3d 1117 (2016). At the time of this Court's decision, the *Toliver* case is on appeal to the Kansas Supreme Court, but it has not rendered an opinion.

[2] *Id.* at 1127.

The Kansas Court of Appeals held that K.S.A. § 22-3717(k) permitted the warrantless, suspicionless search of a parolee's person but did not permit the warrantless, suspicionless search of the parolee's residence.[3] The Court of Appeals made this holding even in light of the fact that the defendant's parole agreement stated that the defendant's residence was subject to warrantless, suspicionless searches.[4] Accordingly, Johnson argues that even though he agreed to the warrantless, susipicionless search of his residence by KDOC parole officers as a condition of his postrelease supervision, the first search of his home was not lawful under *Toliver*.

The Government argues in response that the reasonableness of a search under the Fourth Amendment is governed by federal law—not state law—and that under Supreme Court precedent, a parole officer may conduct a suspicionless search of a parolee. In the alternative, the Government argues that the first search was reasonable because Special Agents Bansemer and Richardson and Sergeant Pfeifer had reasonable suspicion that contraband was located at Johnson's residence.

The Fourth Amendment protects people against unreasonable searches and seizures that intrude on their reasonable expectations of privacy.[5] "A [parolee's] home, like anyone else's is

---

[3] *Id*. at 1126-27.

[4] *Id*. In this case, Johnson is not on parole, but postrelease supervision. The terms "parole" and "postrelease" have separate meanings. The term "parole" means "the release of a prisoner to the community by the Kansas parole board prior to the expiration of such prisoner's term." K.S.A. § 21-4602(d). The term "postrelease supervision" means "release of a prisoner to the community after having served a period of imprisonment . . . where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board to the secretary of correction's supervision." K.S.A. § 21-4703(p). The relevant case law cited by the parties only involves individuals on parole and not postrelease supervision. Nonetheless, given the similarities between the terms and the lack of case law on this issue pertaining to those on postrelease supervision, the Court will look to that law in deciding this case.

[5] U.S. Const. Amend. IV; *United States v. Place*, 462 U.S. 696, 706-07 (1983).

protected by the Fourth Amendment requirement that searches be reasonable."[6] But there are exceptions to the warrant requirement for "searches of probationers and parolees and their homes."[7] One of these exceptions authorizes a search without probable cause "when the totality of the circumstances renders the search reasonable."[8] This exception "is predicated on (1) the reduced (or absent) expectation of privacy that the Court would recognize for probationers and parolees and (2) the needs of law enforcement."[9]

The Supreme Court applied the totality of the circumstances exception in *Samson v. California*.[10] In that case, the defendant was on parole, and a police officer chose to search his person without suspicion of wrongdoing.[11] The officer discovered methamphetamine.[12] The police officer justified the search under California state law, which required parolees to receive notice that they may be subject to a search at any time with or without suspicion.[13] The California trial court denied the defendant's motion to suppress, and the California Court of

---

[6] *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) (quoting *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009)).

[7] *Id.*

[8] *Id.* (quoting *Warren*, 566 F.3d at 1216).

[9] *Id.* A second exception to the warrant requirement is called the "special needs" exception. *Id.* at 1167 n.3. This exception allows "for a parole officer to search parolees in compliance with a parole agreement search provision, but without a warrant" because "[s]upervision [of parolees] . . . is a special need of the States." *Id.* (quoting *United States v. Freeman*, 479 F.3d 743, 746 (10th Cir. 2007)). The Court does not consider this exception because neither party raised it in their briefs or at the hearing and because the Court upholds the search under the totality of the circumstances.

[10] 547 U.S. 843 (2006).

[11] *Id.* at 846-47.

[12] *Id.* at 847.

[13] *Id.*

Appeal affirmed.[14]  The U.S. Supreme Court granted certiorari "to decide whether a suspicionless search, conducted under authority of this [California] statute, violates the Constitution."[15] Answering in the negative, the Supreme Court reasoned that parolees do not have a full expectation of privacy and that the state's search condition was clearly expressed to the defendant who signed an order submitting to it.[16]  "Examining the totality of the circumstances pertaining to [the defendant's] status as a parolee, an established variation on imprisonment, including the plain terms of the parole search condition," the Supreme Court "conclude[d] that [the defendant] did not have an expectation of privacy that society would recognize as legitimate."[17]  The Supreme Court also observed that, in contrast, the state's interests were substantial because (1) states have an overwhelming interest in supervising parolees and (2) states have interests in reducing recidivism and thereby promoting reintegration and positive citizenship among parolees.[18]

The Government asks this Court to apply *Samson* broadly, arguing that the Supreme Court's decision permits the suspicionless search of Johnson's residence.  According to the Government, Johnson was aware of and agreed to a suspicionless search of his residence when he signed the PostRelease Agreement, and therefore, he had a diminished expectation of privacy in his residence.  The Government further argues that this diminished expectation of privacy is outweighed by the State's interest in supervising Johnson, especially in light of his violation of

---

[14] *Id*.

[15] *Id*. at 846.

[16] *Id*. at 850, 852, 853.

[17] *Id*. at 852 (internal citation and quotation marks omitted).

[18] *Id*. at 853.

the PostRelease Agreement. The Court, however, declines to apply *Samson* in this manner because such application would be contrary to the Tenth Circuit's decisions in *United States v. Freeman* and *United States v. Mabry*.

The Tenth Circuit decided *Freeman* one year after *Samson*. The defendant in that case was a parolee who expressly agreed to a search of his "person, residence, and any other person under [his] control."[19] Law enforcement officers and an employee from a parolee monitoring company conducted a warrantless search of his home late one night and discovered contraband.[20] The defendant subsequently was charged with unlawful possession of a firearm.[21] The district court denied the motion to suppress, and the Tenth Circuit reversed.[22]

The Tenth Circuit specifically addressed *Sampson*, noting that in its decision, the Supreme Court stated that "some States and the Federal Government require a level of individualized suspicion" and "strongly implied that in such jurisdictions suspicionless searches would remain impermissible."[23] Thus, the Tenth Circuit concluded that "[p]arolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law."[24] The Kansas regulations in effect at the time only allowed certain parole officers to conduct a warrantless search of the parolee's home and only upon reasonable suspicion that the parolee violated the parole agreement.[25] The Tenth

---

[19] *Freeman*, 479 F.3d at 744-45.

[20] *Id*. at 745-46.

[21] *Id*. at 746.

[22] *Id*. at 746, 749-50.

[23] *Id*. at 747 (internal quotations and citation omitted).

[24] *Id*. at 747-48.

[25] *Id*. at 748.

Circuit found the search of the defendant's home unlawful because it was conducted by law enforcement officers—not the designated parole officers—and because it was conducted without reasonable suspicion of a parole violation.[26]

The Tenth Circuit reiterated its position on *Samson* more recently in *Mabry*. The defendant in that case was a parolee who agreed to "[b]e subjected to a search by parole officers or designated law enforcement officers of [his] person, residence, and any other property under [his] control."[27] After the defendant violated his parole agreement, two KDOC parole officers and two WPD officers arrested him and subsequently searched his home.[28] During the search, the officers discovered a firearm in plain view, and the defendant was charged with unlawful possession of a weapon.[29] The district court denied the defendant's motion to suppress, and the Tenth Circuit affirmed.[30]

Citing *Freeman*, the Tenth Circuit repeated that the constitutionality of parole searches is determined, in part, by state law.[31] Under Kansas law in effect at that time, a warrantless search of a parolee must be supported by reasonable suspicion.[32] Thus, the Tenth Circuit ultimately concluded that the warrantless search of the defendant's house was reasonable because: (1) the defendant had a diminished expectation of privacy as a parolee; (2) there was reliable information that the defendant had violated his parole and was distributing drugs, which

---

[26] *Id*. at 749-50.

[27] *Mabry*, 728 F.3d at 1165.

[28] *Id*. at 1165-66.

[29] *Id*. at 1166.

[30] *Id*. at 1166, 1170.

[31] *Id*. at 1167 (citing *Freeman*, 479 F.3d at 747-48).

[32] *Id*. (citing *Freeman*, 479 F.3d at 748).

supported a reasonable suspicion to search his home; and (3) the state had a strong interest in monitoring the defendant's behavior and preventing his recidivism.[33]

Expanding on *Freeman*, however, the Tenth Circuit also concluded that a parole search that violates state law may still be permissible under Fourth Amendment principles.[34] One of the defendant's arguments in *Mabry* was that the search was unlawful because it violated a Kansas correctional regulation requiring KDOC officers to get prior approval from a supervisor to search a residence.[35] The KDOC officers in the case did not get supervisor approval.[36] The Tenth Circuit rejected the defendant's argument, stating that "while a parole search may be upheld if it is conducted pursuant to a state parole/probation system that itself complies with the Fourth Amendment [,] . . . [t]hat . . . is not the exclusive avenue by which the search may be deemed reasonable under the Fourth Amendment."[37] Rather, " 'a parole search is also valid if reasonable under [the] general Fourth Amendment principles' that apply to searching parolees."[38] The Tenth Circuit further explained that "even assuming a search did not comply with the state law, because it was a search of a parolee, 'it [would be] permissible under general Fourth Amendment principles if the officers had reasonable suspicion that contraband was located at [the defendant's] residence or that a crime had taken place.' "[39] Evaluating the case in light of the totality of circumstances, the Tenth Circuit concluded that the alleged failure to get permission

---

[33] *Id*. at 1167.

[34] *Id*. at 1169.

[35] *Id*.

[36] *Id*.

[37] *Id*. (quoting *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir. 2002)) (internal quotations omitted).

[38] *Id*.

[39] *Id*.

from the supervisor had minimal impact on the defendant's expectation of privacy and the state's interest in supervising.[40] Thus, "his limited expectation of privacy was outweighed by the State's strong interest monitoring his behavior and preventing his recidivism."[41]

As *Mabry* is controlling precedent, the Court must apply its principles to the facts of this case.  Under Kansas law—as set forth in *Toliver*—a suspicionless search of a parolee's residence violates the Fourth Amendment even when a parolee agreed in writing to such a search as a condition of his parole.  Thus, in this case, the first search of Johnson's house violates Kansas law despite the fact that the PostRelease Agreement specifically allows such a search by KDOC parole officers.  But the Court's inquiry does not end there.  As stated in *Mabry*, a search that violates state law may still be permissible if the officers had reasonable suspicion that contraband was located at the defendant's residence or a crime had taken place.[42]  The Court must therefore determine whether Special Agents Bansemer and Richardson and Sergeant Pfeifer had reasonable suspicion to search Johnson's residence.

"Reasonable suspicion is a less demanding standard than probable cause."[43]  It is "merely a particularized and objective basis for suspecting criminal activity." "To determine whether . . . investigating officers had reasonable suspicion, [the Court] consider[s] both the quantity of information possessed by law enforcement and its reliability, viewing both factors under the totality of the circumstances."[44]

---

[40] *Id*.

[41] *Id*. at 1169-70.

[42] *Id*. at 1169.

[43] *Tucker*, 305 F.3d at 1200 (internal quotation marks omitted).

[44] *Id*.

There are sufficient facts in this case for the Court to conclude that the officers had reasonable suspicion to search Johnson's residence. Detective Mellard from the WPD testified at the hearing that a CODIS search revealed that DNA obtained from one of the burglary sites matched the DNA of Johnson. As a result, a KDOC Order to Arrest and Detain had been issued for Johnson in addition to an arrest warrant from the Sedgwick County District Court. Therefore, the officers had a particularized and objective basis for suspecting criminal activity at Johnson's residence.

When considered in light of the totality of the circumstances, the Court concludes that the first search of the residence was reasonable under the Fourth Amendment. First, Johnson had a diminished expectation of privacy. Johnson expressly agreed in the PostRelease Agreement that his residence may be searched by parole officers with or without a warrant and with or without cause.[45] Second, in light of the information linking him to the jewelry store burglaries, the arrest warrant, and the KDOC Order to Arrest and Detain, the officers had reasonable suspicion to search his residence. And, finally, the State has a strong interest in monitoring his behavior and preventing his recidivism, especially in light of his recent parole violations.[46] The State's interest outweighed Johnson's diminished expectation of privacy. Accordingly, the search was valid under the totality of the circumstances.

---

[45] *See id.* ("A parole agreement containing a provision allowing the search of a parolee's residence diminishes the parolee's reasonable expectation of privacy in his residence."). In this case, Johnson's residence was searched by both KDOC special agents and a law enforcement officer—WPD Sergeant Pfiefer. The fact that Sergeant Pfeifer also participated in the search despite not being a KDOC parole officer is irrelevant because he was participating at the special agents' direction. The Tenth Circuit has held that a police officer may participate in a search of a parolee's home by parole officers as long as the police officer is acting under the direction of a parole officer. *Warren*, 566 F.3d at 1217. Regardless, Johnson still had a diminished expectation of privacy because of the language of the PostRelease Agreement.

[46] *See Samson*, 547 U.S. at 853 ("[A] State has an overwhelming interest in supervising parolees because [they] are more likely to commit future criminal offenses.").

### B. The Inevitable Discovery Rule Applies to Make the Evidence Admissible.

Although the Government did not raise this issue, Johnson's motion may also be decided under the inevitable discovery rule. Even if the Court removes all observations from the first search from the affidavit in support of the search warrant, there was probable cause to search for items related to the burglary inside the house.

The inevitable discovery rule permits evidence to be admitted "if an independent, lawful police investigation inevitably would have discovered it."[47] Even if Johnson would have shown that the firearms holster, jewelry, and designer watches discovered during the first search were illegally obtained, "the government may avoid suppression by demonstrating that the evidence would have been inevitably discovered, that it was discovered by independent means, or that it was so attenuated from the illegality as to dissipate any taint from the Fourth Amendment violation."[48] When the investigation involves a search warrant, "[t]he government's inevitable discovery theory requires that the affidavit, stripped of the evidence obtained during the unconstitutional sweep, establish sufficient probable cause to support the search warrant."[49] That is because "an affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid."[50]

---

[47] *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005).

[48] *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006).

[49] *United States v. Roof*, 103 F. App'x 652, 660 (10th Cir. 2004).

[50] *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990) (citing *United States v. Karo*, 468 U.S. 705, 719 (1984)).

-13-

Here, the question is whether there was sufficient probable cause for a search warrant if the affidavit excluded the firearms holster, jewelry, and designer watches discovered during the first search of the residence. In addition to the evidence discovered during the first search, the affidavit supporting the search warrant application described the burglary of a jewelry store that had taken place in October 2014. It stated that (1) during the burglary, an individual left blood instead the store on some of the broken glass; (2) the blood sample was collected and sent to the Forensic science center for analysis; (3) the blood sample generated a DNA profile; and (4) a CODIS search resulted in a DNA match to Johnson. The affidavit also stated that as a result of the DNA match, a warrant was obtained for Johnson's arrest, and that the WPD officers knew his address because he had given that information to his KDOC parole officers.

If the affidavit did not include the observations from the first search, the Court concludes that a valid search warrant still would have been issued. The DNA match to Johnson from the blood sample links Johnson to the jewelry store burglary. It is not unreasonable that a burglary store suspect would hide stolen items or evidence of sale of stolen items in the suspect's home. The affiant knew Johnson's address because this was information he had given his KDOC post release supervision officer. Therefore, the affidavit contained sufficient accurate and untainted evidence to establish probable cause for a search warrant. The Court is convinced that the affidavit and search warrant were valid even without the reference to the observations made during the first search. Therefore, the handgun and all of the other evidence obtained in the second search would have been inevitably discovered under a valid search warrant.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 16) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 13th day of November, 2017.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE